UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RECOVERY EXPRESS, INC, *et al*, | : | Case No. 1:05-cv-226 |
| | : | |
| Plaintiffs, | : | Dlott, J. |
| | : | Black, M.J. |
| vs. | : | |
| | : | |
| WARREN COUNTY FRATERNAL | : | |
| ORDER OF POLICE, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION[1] THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (doc. 20) BE DENIED**

This civil action is now before the Court on defendant Warren County Fraternal Order of Police's (" FOP") for summary judgment (doc. 20) and the parties' responsive memoranda (docs. 23, 24).

### I. BACKGROUND AND FACTS

Plaintiff, Recovery Express, is a Kentucky corporation doing business as Children's Benefit Services (hereinafter "plaintiff or "Children's Benefit"), that assists non-profit and charitable organizations by contracting to solicit funds for them. (Doc. 1 ¶ 4.) Children's Benefit is owned and run solely by Susan Anthony, and its principal place of business in Kentucky. Children's Benefit raised funds by contracting with two or more individuals to be solicitors who seek cash or check donations for FOP activities such as

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

"Shop With a Cop" and the "Community Picnic."

In December 2003, defendant FOP entered into a one-year contract ("the Agreement") with plaintiff for fund-raising in connection with the Officers Christmas for Kids funding raising program. Plaintiff also entered into identical written contracts with defendants Randall Mullins and David Uleman to solicit donations for the FOP program in conjunction with the Agreement.

Mullins and Uleman worked from a stack of index cards containing, for each donor, the donor's name, address, and donation history, indicating amounts and dates. Mullins and Uleman updated the information on the cards as they made the calls. Contributors names - but not amounts, addresses, or phone numbers - were typically published in a donor list in the program for the event. At Plaintiff's expense, Mullins and Uleman would also update the list once a year by marking names in a "crisscross" directory, street by street, to facilitate the collections.

Mullins and Uleman kept the cards in Mullins' closet and in a box in a cupboard in the second floor office they used in the FOP's building in Lebanon, Ohio. No one from the FOP looked at the cards (Mullins Dep. at 97). Ronald Reaves, the FOP's secretary, and the FOP board member with the most contact with Mullins and Uleman, testified that he was aware of the cards but had never seen them. (Doc. 17, Reaves Dep. at 20-21).

The agreements with Mullins and Uleman set forth specific duties. Mullins and Uleman (the "promoters") each agreed:

    5.    "All records ….shall be the property of the Company. Records shall

        include the names of ticket buyers and all other documents reflecting the source and amount of ticket sales, donations or other contributions. The Promoter shall deliver all records to the Company immediately after the final settlement.

6.      All data or information concerning the business activities of the Company …..shall be kept secret and confidential…. This covenant of confidentiality shall extend beyond the term of this agreement and shall survive the termination of this agreement for any reason.

7.      The Promoter understands that the relationship between the Sponsor and the Company is a valuable property right of the Company. The Promoter agrees not to interfere with the relationship between the Sponsor and Company and further agrees to protect the integrity of that relationship. T he Promoter will not solicit or enter into any agreement with any sponsor located in a county where the Company does business for a 5 year period beginning on the date of this agreement.[2]

(Doc. 1, Exhs. B, C.)

At the end of 2004, the FOP terminated its relationship with Children's Benefit. Ms. Anthony advised the FOP of her non-compete agreements with Mullins and Uleman, and of the non-compete covenants therein. She was advised that the FOP did not consider itself bound by the agreements with Mullins and Uleman, and that it would continue the solicitations with Mullins and Uleman and without her. Plaintiff thereupon demanded from Mullins and Uleman the return of her records. This did not happen. (Doc. 23, Ex. A., Anthony Affidavit.).

---

[2] The number "5" is handwritten into a blank space on the contract. Defendants Uleman and Mullins contend that the agreement was signed with that space blank, and the number later inserted by Ms. Anthony. Plaintiff contends that the number was in the agreement before it was presented to Mullins and Uleman and signed by them.

Thereafter, the FOP entered into an agreement with Mullins and Uleman to solicit charitable donations for the FOP directly. Mullins and Uleman informed the FOP that they were not bound by a non-compete agreement with Plaintiff. Mullins and Uleman proceeded to solicit donations directly for the FOP utilizing names and telephone numbers from the customer cards with donor information from their previous employer.

Thereafter, on April 5, 2005, plaintiff filed the instant action against defendants alleging misappropriation of trade secrets and tortious interference with a business relationship. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

Defendant FOP is now seeking summary judgment asserting that there are no genuine issues of material fact and it is entitled to judgment as matter of law. For the reasons that follow, the undersigned recommends that the FOP's motion be denied.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which might affect the outcome of the action. *Celotex,* 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

### III.  DISCUSSION

Defendant FOP contend that the donor cards do not satisfy the definition of trade secrets and, therefore, that plaintiff's claim for misappropriation of trade secrets is properly dismissed on summary judgment.  The FOP further contends that plaintiff cannot establish the necessary elements of a claim for tortious interference with contract.  Each assertion will be addressed in turn.

    A.    *Misappropriation of Trade Secrets*

A trade secret is defined in Ohio Revised Code section 1333.61(D) as follows:

> Any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfied both of the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) It is subject of efforts that are reasonable under the circumstances to maintain its secrecy."

*Id.*

Moreover, to constitute a trade secret, the information must be both unique and competitively advantageous.  *Wiebold Studio, Inc. v. Old World Restorations, Inc*., 19 Ohio App.3d 246, 484 N.E.2d 280 (Ohio 1985).  Trade secrets are generally thought of as things that give an employer a competitive advantage over another, and, as such, are extremely coveted.  *Id.*

What is generally proscribed under trade secret laws is the misappropriation of the

information obtained from the person holding the trade secret and later conversion of the information to the use and gain of the person obtaining the secret. *Consumer Direct, Inc. v. Limbach*, 62 Ohio St.3d 180, 183, 580 N.E.2d 1073 (Ohio 1991).

Here, the FOP contends that the donor cards are not trade secrets because plaintiff took no steps to protect their secrecy. Defendant Mullins testified that at no time did plaintiff tell him he was prohibited from sharing the donor information with third parties. Defendant further contends that the information was readily ascertainable from other sources. The names and addresses of donors could be easily accessed through crisis-cross street/phone directories as well as the annual donor yearbooks that were published.

Plaintiff asserts, however, that the donor cards constitute trade secrets as defined in Ohio Rev. Code Ann. § 1333.61. Plaintiff argues that defendants Mullins and Uleman's deposition testimony clearly identified the independent economic value of the donor cards. Plaintiff further argues that reasonable efforts were undertaken to maintain the secrecy of the donor cards, and that the information contained therein was not readily ascertainable.

As noted above, the donor cards were kept in Mullins' closet and in a box in a cupboard in the second floor office in the FOP's building in Lebanon, Ohio. No one from the FOP looked at the cards (Mullins Dep. at 97). Ronald Reaves, FOP's secretary, and the FOP board member with the most contact with Mullins and Uleman, testified that he was aware of the cards but had never seen them. (Doc. 17, Reaves Dep. at 20-21).

Plaintiff maintains that the FOP was not a fund raising organization, did not

conduct any other fund-raising, and, therefore, the efforts undertaken for the security of the cards was reasonable.  *See Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 707 N.E.2d 853 (Ohio 1999) (customer list at issue was a trade secret because the employer kept copies of the customer list in a filing cabinet that was sometimes locked; and "probably" told its employees that its customer list was confidential and not to be removed from the office.)

Furthermore, the agreement between plaintiff and defendants Mullins and Uleman contained non-compete and anti-disclosure covenants, and it provided that they return all records, including the donor cards, at the termination of their work with plaintiff  (Doc. 1, Ex. B, ¶¶ 5, 6, 7).  Lastly, only contributors names -  not amounts, addresses, or phone numbers -  were typically published in a donor list in the program for the event.

Accordingly, it appears that plaintiff may have undertaken reasonable efforts to maintain the secrecy of the information contained in the donor cards.  Moreover, the agreement included non-compete and anti-disclosure covenants, and the donor lists only included names not amounts address or phone numbers.  Thus, genuine issues of material fact exist with respect to this claim, *i.e,* whether plaintiff's efforts to keep the information secret were reasonable, and whether the donor cards contained information that was easily ascertainable from other sources.  *See Valco Cincinnati, Inc. v. N & D Machining Serv., Inc.*, 24 Ohio St.3d 41, at 47, 492 N.E.2d 814, at 819 (Ohio 1986) (The question whether a particular knowledge or process is a trade secret is, however, a question of fact to be determined by the trier of fact upon the greater weight of the evidence)

B.   *Tortious Interference*

Plaintiff complaint also alleges that defendant FOP's "actions intentionally, proximately and directly caused the termination and breach of the contracts and relationships between plaintiff and Uleman and Mullins." (Doc. 1, ¶ 33) The FOP argues, however, that plaintiff cannot establish the elements of either claim because Mullins and Uleman did not have a contract in existence with plaintiff at the time they entered into a contract with the FOP.

"The elements of the tort of tortious interference with contract are (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages. *Fred Siegel Co.,* 85 Ohio St.3d at 176, 707 N.E.2d at 858. "Establishment of the fourth element of the tort of tortious interference with contract, lack of justification, requires proof that the defendant's interference with another's contract was improper. *Id.*[3]

Furthermore, "[t]he elements of tortious interference with a business relationship are (1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting

---

[3] "In determining whether an actor has acted improperly in interfering with a contract or prospective contract of another, consideration should be given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties. (Restatement of the Law 2d, Torts (1979), Section 767, adopted.)" *Fred Siegel Co., L.P.A., 85 Ohio St.3d at 707.*

therefrom." *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 604, 774 N.E.2d 775, 780 - 781 (Ohio Ct. App.2002).

Here, the FOP argues that plaintiff's claims fail because Mullins and Uleman did not have a contract in existence and/or a business relationship with plaintiff at they time they entered into a contract with the FOP. As noted above, the Agreement between plaintiff and Mullins and Uleman expressly provides to the contrary:

> 5. "All records ….shall be the property of the Company. Records shall include the names of ticket buyers and all other documents reflecting the source and amount of ticket sales, donations or other contributions. <u>The Promoter shall deliver all records to the Company immediately after the final settlement.</u>
>
> 6. All data or information concerning the business activities of the Company …..shall be kept secret and confidential….<u>This covenant of confidentiality shall extend beyond the term of this agreement and shall survive the termination of this agreement for any reason.</u>
>
> 7. <u>The Promoter understands that the relationship between the Sponsor and the Company is a valuable property right of the Company. The Promoter agrees not to interfere with the relationship between the Sponsor and Company and further agrees to protect the integrity of that relationship. The Promoter will not solicit or enter into any agreement with any sponsor located in a county where the Company does business for a 5 year period beginning on the date of this agreement</u>

(Doc.1, Ex. B, C)(*emphasis added*).

Accordingly, the evidence of record establishes that the contractual obligations of Mullins and Ulemen extended beyond the one-year term of the Agreement. Moreover, it remains disputed whether Defendant was aware of these obligations and nevertheless solicited Mullins and Uleman to violate the non-compete and anti-disclosure covenants

-9-

contained in the Agreement.  Thus, summary judgment is improper with respect to these claims.

### IV.

Accordingly, the undersigned finds that defendant's motion for summary judgment is not well-taken.  It is therefore **RECOMMENDED** that defendant's motion for summary judgment (doc. 20) should be **DENIED.**.


Date:   August 24, 2007   　　　　　　　　　　　　  s/Timothy S. Black
　　　　　　　　　　　　　　　　　　　　　　　　　Timothy S. Black
　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RECOVERY EXPRESS, INC, *et al*, | : | Case No. 1:05-cv-226 |
| | : | |
| Plaintiffs, | : | Dlott, J. |
| | : | Black, M.J. |
| vs. | : | |
| | : | |
| WARREN COUNTY FRATERNAL | : | |
| ORDER OF POLICE, INC., *et al.*, | : | |
| | : | |
| Defendant. | : | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation within **TEN DAYS** after being served with a copy thereof. That period may be extended by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the Report and Recommendation objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to an opponent's objections within **TEN DAYS** after being served with a copy those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).